UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                          )<br>)<br>(5) ROBERT FLAXMAN,     )<br>)<br>          Defendant     )<br>) | Criminal No.: 19-10117-IT-5 |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The government respectfully submits this supplemental memorandum in connection with the sentencing of defendant Robert Flaxman.

Flaxman, a wealthy real estate developer, paid $75,000 to cheat on his daughter's ACT exam and thereby fraudulently inflate her score.[1] Flaxman's actions resulted in his daughter becoming a participant in the cheating scheme. And Flaxman did not draw the line at admissions fraud, but committed tax fraud as well by deducting the bribe payment from his income taxes.

For his actions, Flaxman should be sentenced to a term of eight months in prison, followed by 12 months of supervised release, and a fine of $40,000.

**I.   Flaxman's Actions Resulted in His Daughter Becoming Complicit In the Cheating Scheme**

By at least the fall of 2016, Flaxman had agreed with co-conspirator William "Rick" Singer to engage in the exam cheating scheme for his daughter. His daughter had previously taken the ACT exam twice on her own. Both times, she scored in approximately the 75th percentile. *See* Ex. A (April 2016 ACT Score Report); Ex. B (September 2016 ACT Score Report). Concerned

---

[1] Flaxman is the owner and chief executive officer of Crown Realty & Development, Inc., a California-based firm that owns, operates, and develops commercial real estate in six states.

that these scores were too low, Flaxman registered his daughter to take the exam a third time at a corrupt testing facility Singer controlled in Houston, Texas – 2,000 miles from where Flaxman's daughter lived – using a testing accommodation the ACT had granted his daughter to facilitate the move.  *See, e.g.,* Ex. C (September 12, 2016 e-mail chain).

Notwithstanding the accommodation, which allowed Flaxman's daughter to take the exam with extended time, over two days, Flaxman made clear that he did not intend for her to actually use the extra time.  *See* Ex. D at 5 (ACT accommodation materials, in which Flaxman's daughter received extended time to test over multiple days).  He told Singer that he planned for his daughter to take the exam from "8 am – 1 pm on test day so we can plan [the] flight out."  Ex. E (October 4, 2016 e-mail chain).  Flaxman also asked Singer to provide "instructions" that Flaxman could give his daughter in advance about how the testing would work.  *See id*.  Singer provided Flaxman with contact information for Niki Williams, the corrupt test administrator at the Houston Test Center.[2]  *See* Ex. F (October 6, 2016 e-mail chain).

Flaxman's daughter took the ACT exam at the Houston Test Center on October 22, 2016, along with the daughter of co-conspirators Elizabeth and Manuel Henriquez.[3]  *See* PSR ¶ 39. Flaxman's daughter and the Henriquezes' daughter took the exam as a group, with the corrupt proctor, Mark Riddell, helping them answer questions.  To minimize the chance that the ACT would suspect cheating, Riddell instructed them to answer different questions incorrectly, so that their answers were not too similar.  *Id*.  Flaxman's daughter received a score of 28 on the exam, in the 89th percentile.  She then used the fraudulent score as part of her applications to colleges in California and elsewhere.  *See id.; see also* Ex. G (October 2016 Act Score Report).

---

[2] Williams has been separately charged.

[3] The Henriquezes have been separately charged.

Two days before the exam, Flaxman caused his company to wire $75,000 to Singer's purported charity, the Key Worldwide Foundation ("KWF") as payment for the scheme. Singer, in turn, paid Riddell and Martin Fox, a co-conspirator who was Singer's conduit to Williams.[4]

On a subsequent call with Flaxman, Singer – who by this point was cooperating with the government's investigation and acting at the direction of law enforcement agents – told Flaxman that the Internal Revenue Service ("IRS") was auditing KWF. Ex. H at 2-3 (October 23, 2018 call transcript). During the call, which was consensually recorded, Flaxman asked Singer what he should tell the IRS. Singer responded: "We'll say the payments were made to our foundation to help kids--underserved kids." *Id*. at 3-4. Flaxman replied: "Okay. That's fine." *Id*. Flaxman added: "I'm wondering if we took the deduction. I'm assuming we did." *Id*. at 4.

## II. Flaxman Should be Sentenced to a Meaningful Term of Incarceration

Flaxman's conduct warrants a meaningful term of incarceration. He did not succumb to pressure to commit fraud, but sought Singer out after his daughter performed poorly on the ACT exam. He hijacked his daughter's legitimate need for a testing accommodation to advance the scheme, with no intention that she would legitimately use any of the extra time for which she qualified. And his actions resulted in his daughter becoming complicit in the cheating.

Although it is not clear if Flaxman informed his daughter about the scheme ahead of time, his request for "instructions" for his daughter on how the testing process would work suggests that he considered doing so. This much is clear, however: even if she wasn't aware of it before, Flaxman's daughter became aware of the scheme during the exam, when she took it together with another student, with Riddell feeding them answers and advising them to answer different

---

[4] Fox has been separately charged.

questions incorrectly to reduce the risk of getting caught. Later, Flaxman's daughter used that fraudulent score to gain admission to college. And she was suspended from college for a semester after the scheme was uncovered. *See* PSR ¶ 83; *see also* Flaxman's Objection to PSR ¶ 83. Flaxman's crime thus placed his daughter directly in harm's way. His actions didn't just demonstrate his own disregard for the law, but also for one of the most basic principles of parenting: don't teach your kids to break the law.

Flaxman knew that what he was doing was wrong, and agreed with Singer to help conceal it. When Singer told him that KWF was under audit, Flaxman asked what he should say if asked about his payment, and agreed without hesitation to mislead the IRS by claiming that the money was a "donation" to help underserved children. That lie, of course, was of little moment to Flaxman, who by that point had already lied to the IRS once, by deducting the bribe payments from his taxes.

This last fact is particularly troubling given that Flaxman is a successful businessman who owns and leads a major real estate development company. It underscores the need for a sentence that not only provides just punishment and adequate general deterrence, but that also specifically deters Flaxman from committing additional crimes. Flaxman may not bribe someone to cheat on another college entrance exam, but his sentence needs to reflect his nonchalant willingness to commit tax fraud, and to dissuade him from doing so again when he thinks no one is looking.

**Conclusion**

For his crime, Flaxman should be sentenced to a term of eight months of incarceration followed by 12 months of supervised release, and a fine of $40,000.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   */s/ Justin D. O'Connell*
ERIC S. ROSEN
JUSTIN D. O'CONNELL
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
Assistant United States Attorneys

Date: October 11, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of records for each other party by CM/ECF on October 11, 2019.

By: <u>*/s/ Justin D. O'Connell*</u><br>
JUSTIN D. O'CONNELL