**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>ROBERT FLAXMAN,<br><br>    Defendant. | Case No. 1:19-cr-10117-IT<br>Leave to file granted on 10/16/19 |

**DEFENDANT ROBERT FLAXMAN'S**
**SUPPLEMENTAL SENTENCING MEMORANDUM**

Robert Flaxman submits this supplemental sentencing memorandum for two reasons: (1) to address a claim in the government's sentencing memorandum that was not made in the Complaint, Information, Rule 11 hearing, or PSR – namely, Robert's purported "nonchalant willingness to commit tax fraud;" and (2) to address several exhibits attached to the government's sentencing memorandum and correct related inaccuracies in the memorandum itself.

1. **Robert's Tax Filings**

In May 2016, when Singer asked Robert to fulfill his pledge to support USD's sports program and to do so through the Key Worldwide Foundation, Robert still had no idea Singer was a fraud or that KWF was not what Singer claimed it to be. Before making the contribution, Robert followed his standard practice with all charities and foundations: he asked KWF to certify that it was a 501(c)(3) organization and asked his accountant to verify that certification with the IRS. His accountant did so and then entered KWF as a charity in the accounting software he used to track Robert's expenses. As a result of that entry, when Robert's tax

accountant prepared Robert's 2016 tax returns seventeen months later, in October 2017, the accounting software automatically designated both the $250K contribution as well as the later $75K payment to KWF as charitable deductions.

Should Robert have foreseen this was going to happen and done something to prevent it? Of course he should. Robert learned Singer was a fraudster in August 2016, when Singer first offered to sell Robert a phony ACT score for his daughter. Robert should have corrected the KWF entries then, and he knows it. But he did not fail to do so because he was intent on defrauding the IRS. He failed to do so because he was asleep at the switch. In fall 2016, as the deadline for applying to colleges approached, Robert was in a panic, knowing that if ▇▇▇ did not get in anywhere, he was going to have to find some other suitable post-treatment environment for her. Getting through that whole process took months. So he was not thinking about his 2017 tax return then, and he did not think about the KWF matter again until October 28, 2018, when Singer called him out of the blue for the first time in two years to say he was being audited by the IRS and reminded Robert about the payments. Even then, as the transcript of the call reflects, Robert was not sure he had even deducted the payments; the transcript quotes him as saying to Singer: "I'm wondering if we took the deduction. I'm assuming we did."

After that call, Robert looked at his 2016 tax return (which was hundreds of pages long) and confirmed that he had listed the KWF payments as tax deductions. He also learned that doing so probably had no effect on his taxes because he had a large net operating loss that had offset all of his income in 2016 and 2017, making deductions irrelevant. That meant he could fix

the problem by simply not carrying forward the unused deduction to his 2018 tax return, which is what he has done.¹

In short, Robert acknowledges that he was inexcusably careless in not following up with his accountant to ensure that the amounts he paid Singer were not deducted on his tax returns. Once he learned Singer was a fraudster he should have taken action. But the government goes too far when it characterizes this failure as an aggravating factor that "warrants a meaningful term of incarceration." Gov't Sent. Mem. at 3. Making a false statement on a tax return is a three-year felony. 26 U.S.C. § 7206(1). Structuring financial transactions, in contrast, is a five-year felony. 31 U.S.C. § 5324(d)(2). Yet the Court did not find that Mr. Sartorio's admitted structuring in connection the ACT cheating offense warranted a meaningful term of incarceration.

Nor does Robert deserve a "a meaningful term of incarceration" on the ground that when Singer told him about the purported IRS audit, he did not react by stating that they should both come clean to the government and admit engaging in the ACT fraud. Once again, the Court did not find that Mr. Sartorio deserved a meaningful term of incarceration even though he received a nearly identical call from Singer and likewise failed to insist that he and Singer both confess the ACT scheme to the government. In fact, his response to Singer indicated no different intentions or greater scruples than the government attributes to Robert in connection with a potential IRS inquiry.²

---

¹ Because of a quirk of the Alternative Minimum Tax, retroactively removing the unused deduction from Robert's 2016 return (which he has also done) triggered an $86 tax increase, which he has paid.

² Indeed, it appears Mr. Sartorio and Singer took pains to conceal their transaction not just by structuring cash withdrawals but also by leaving no paper trail whatsoever. According to the government's sentencing memorandum in Mr. Sartorio's case, Sartorio said to Singer:

2. ███████ ACT Scores

The government's sentencing memorandum states that ███████ took the ACT twice on her own and both times "scored in approximately the 75th percentile." That is incorrect, as the government's own exhibits reflect. ██████ first took the exam in April 2016 and received a composite score of 20, which is a score in the 51st percentile. That is reflected in Exhibit A to the government's memorandum. She retook the exam in September 2016 and received a composite score of 24, which is a score in the 74th percentile. But in August 2016, when Singer advised Robert that with a score of 20 ██████ would not likely get into any college given ████████████████████████████████████████████, ██████ had not yet taken the September exam; and she did not actually receive the results of the September exam with the slightly better score.until after she took the test in October 2016 with Riddell.

| | |
|---|---|
| Date: October 11, 2019 | Respectfully submitted, |
| | ROBERT FLAXMAN, |
| | By His Attorneys: |
| | /s/ William D. Weinreb |
| | William D. Weinreb (BBO #557826) |
| | Michael T. Packard (BBO #676934) |
| | Quinn Emanuel Urquhart & Sullivan, LLP |
| | 111 Huntington Ave, Suite 520 |
| | Boston, MA 02199 |
| | (617) 712-7100 |
| | michaelpackard@quinnemanuel.com |
| | billweinreb@quinnemanuel.com |

---

There is no-- no-- there is no record on my end like a 1040. There is nothing on my end that shows that your company, Rick, or anybody, received any cash payments. Only payments they could look at would be an invoiced amount or an actual check. And that what w-- that was already discussed. But anything that was done verbally, that was verbal and there's no record. There's nothing. There's nothing.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF on counsel of record for the Government and all defense counsel on October 17, 2019.

/s/ William D. Weinreb<br>
William D. Weinreb